# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

- - - - - - - - - - - - - -
## NO. 03-01-00645-CV
- - - - - - - - - - - - - -

**Mark Trostle and Carroll Draper, Appellants**

**v.**

**Susan Combs, Commissioner of Agriculture and in her Individual Capacity; Donnie Dippel, Kathy Reed, Sara Jo Snodgrass, Raette Hearne, Charlie Thomas, Larry Beauchamp, and Martin Hubert, in their Official and Individual Capacities; and Lisa Woods and Karen Macomb, in their Official Capacities, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. 99-09869, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

---

## O P I N I O N

Appellants Mark Trostle and Carroll Draper appeal from the take-nothing summary judgment rendered against their claims that the appellees damaged them while demoting them at the Texas Department of Agriculture (Athe Department@). Trostle and Draper contend that they were deprived of property interests, liberty interests, and due process by appellees acting in the following capacities: Susan Combs, Commissioner of Agriculture and in her individual capacity; Donnie Dippel, Kathy Reed, Sara Jo Snodgrass, Raette Hearne, Charlie Thomas, Larry Beauchamp, and Martin Hubert, in their official and individual capacities; and Lisa Woods and Karen Macomb, in their official capacities. Trostle and Draper contend that Combs slandered them *per quod* and *per se*, that several appellees intentionally inflicted emotional distress upon them, and that the appellees conspired to inflict emotional distress and humiliation

upon them. Appellees moved for summary judgment, contending that their actions are protected by the at-will employment doctrine and do not violate the constitution or any of the laws alleged. The court granted the motion without stating a basis. We will affirm the judgment.

## BACKGROUND

Trostle and Draper are longtime employees of the Department. Trostle was the director of the pesticide-registration program and Draper was a pesticide-registration specialist. Both had good employment records before the incident leading to their demotion.

In late 1998, Trostle was invited by his friend, Dr. J.R. Moody, to hunt deer on a lease in Concho County. Trostle believed Moody, an employee of Zeneca Ag Products, owned the lease. Trostle invited Draper. Appellants provided their own transportation, toiletries, food, and bedding. They did not shoot or kill any game while on the lease.

On February 11, 1999, Trostle and Draper were questioned by Donnie Dippel, their immediate supervisor, and Larry Beauchamp, the Department=s ethics officer, about the hunting trip. Dippel and Beauchamp told appellants that the trip violated the Department=s ethics policies and the penal code. Dippel and Beauchamp further stated that appellants must sign individual statements about the trip or face termination and prosecution. Five days later, they were pressed to sign individual statements prepared by Beauchamp admitting that the lease was owned by Zeneca, a company regulated by the Department. Both appellants signed such statements.

On February 19, 1999, appellee Martin Hubert, the deputy commissioner of agriculture, told appellants they must quit, be fired, or agree to demotion, probation, and salary reduction. Hubert

2

reiterated the Department=s position that the hunting trip constituted acceptance of a benefit from a company that the Department regulatedСa violation of Texas Penal Code section 36.08 and the Department=s ethics policies. Appellants signed documents detailing the terms of their demotion and probation. In conjunction with their demotions, Trostle lost $635 in monthly salary and Draper lost $384 in monthly salary.

Appellants later learned that the lease is held in the name of another Zeneca employee who, Beauchamp said he learned, used funds from Zeneca to pay for the lease.

Many people outside the Department learned of the accusations against appellants. Appellants specifically allege that Combs told Chris Shields, the executive director of the Texas Aerial Applicator Association, that appellants had taken a bribe from Zeneca.

Appellants sued, claiming that appellees deprived them of their interests in property, liberty, and due process.[1] They also claimed that appellees intentionally inflicted emotional distress on them, and that Combs slandered them. Appellees filed a motion for a no-evidence summary judgment that was denied except as to the claims for intentional infliction of emotional distress.

Appellees later filed a combined no-evidence and traditional motion for summary judgment against the remaining claims. In response, appellants filed affidavits describing their work histories, the lack of process in their demotions, the spread of rumors about their demotions, and the effect they believed the rumors and their demotions had on their job prospects within and outside the Department. The district

---

[1] Appellants also sued the Department and Shields. The Department was dismissed and Shields was nonsuited. Appellants do not appeal the judgment as to the Department and Shields.

court granted the appellees= second motion for summary judgment without stating a basis. In the course of granting the motion, the court sustained objections to appellants= affidavits, and denied a hearsay objection to the affidavit of appellants= former counsel Jason Nassour submitted for the purpose of attempted impeachment of Shields.

## DISCUSSION

Appellants raise seven issues on appeal. They contend that the district court erred by concluding that they did not show either that they have a property interest in their employment and retirement benefits or that appellees violated their liberty and property interests. Appellants also argue that the district court erred by concluding that they did not produce evidence of a genuine issue of material fact concerning their claims that appellees engaged in a civil conspiracy or slandered appellants. Appellants further contend that the district court erred by granting summary judgment on the basis of immunity. Finally, appellants argue that the district court erred by sustaining appellees= objections to their evidence submitted in support of their response to appellees= second motion for summary judgment.

The appellate standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff=s theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671,

**4**

678-79 (Tex. 1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex. App.CDallas 1992, no writ).

**Property interest**

Appellants contend that they have a property interest in their employment and retirement benefits at the Department. They acknowledge that employment in Texas is at will, but contend that the Department=s disciplinary policy establishing methods for demoting or firing employees created property interests in their continued employment, retirement benefits, and the processes described in the Department=s policy manual. They point to language requiring all employees to abide by the manual=s policies, which include particular processes for grievances and adverse employment decisions.

A protected property interest in employment, process, or benefit exists only when an employee has a Alegitimate claim of entitlement@ to the employment, process, or benefit. *See Board of Regents v. Roth*, 408 U.S. 564, 576-77 (1972). The employee must have more than an abstract need, desire, or unilateral expectation of it. *Id*. at 577.

The presumption that employment in Texas is at will is difficult to overcome. A[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee for good cause, bad cause, or no cause at all.@ *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). A manual alters the at-will status only if it contains language that specifically and expressly limits the employment relationship and curtails the employer=s right to terminate the employee. *Texas State Employees Union v. Texas Workforce Comm=n*, 16 S.W.3d 61, 66 (Tex. App.CAustin 2000, no pet.). A disclaimer in an employee handbook negates any implication that a personnel procedures

manual places a restriction on the employment at-will relationship. *Federal Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993). In that case, the court found that any implication of a restriction on the at-will status of an employee in the company personnel manual was negated by language in that manual stating that Athe policies and procedures set forth in this manual provide guidelines for management and employees during employment, but do not create contractual rights regarding termination or otherwise.@ *Id.*

Similarly, the Department=s manual contains ample and repeated denials that it restricts the Department=s ability to fire or demote employees at will. The manual contains a chapter entitled Aemployment at will@ that contains the following policy statement.

> The Texas Department of Agriculture adheres to the common-law doctrine of at-will employment. This means that once employed with the department, you serve at the pleasure of the commissioner. The department=s policies, manuals, and procedures are subject to change and do not constitute terms of an express or implied employment agreement. No employee of the department has the authority to enter into a contractual agreement regarding employment with any other employee of the department.

The chapter setting out the disciplinary process contains a section entitled Aemployment at will@ that repeats the first two sentences quoted above, then states, ANo disciplinary action is a prerequisite for other disciplinary action, including termination.@ The manual then sets out the process that managers Amay@ use, including discussion, oral and written warnings, and probation. Next, in a paragraph entitled Avariations,@ the manual states:

> The above identified process may be varied or totally eliminated depending upon the severity and/or recurring nature of the employee=s behavior. It is also possible to use suspensions without pay and demotions in addition to, or in place of, these steps. Committing a criminal or unethical offense may be grounds for immediate termination.

**6**

The chapter setting out the grievance process closes with a paragraph in bold print that states, ANothing in this policy should be construed as creating a contract of employment or any property right in employment. Notwithstanding the procedures set forth in this policy, employment at the Texas Department of Agriculture may be terminated at will.@

The manual=s repeated disclaimers show unequivocally that the policies and procedures therein did not alter the at-will employment status of appellants. *See Dutschmann*, 846 S.W.2d at 283. We hold that appellants therefore did not have a protected interest in their jobs. They may have an interest in the employment benefits they had accrued, but there is no indication that those benefits were affected by the demotions. Appellants lack a protected interest in benefits they speculate they would have accrued if they had not been demoted. *See Roth*, 408 U.S. at 577.

**Liberty interest**

Appellants contend they were deprived of a liberty interest. Appellants must show that they were discharged without meaningful process, that they requested and were denied a chance to clear their names, and that false, defamatory charges were made public in connection with the discharge. *Rosenstein v. The City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989).

Appellants, however, were demoted, not discharged. *See Paul v. Davis*, 424 U.S. 693, 710 (1976). They contend that a question remains regarding whether their demotions were significant enough to be a discharge under the standard. AThe internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the

**7**

additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment.@ *See Moore v. Otero*, 557 F.2d 435, 438 (5th Cir. 1977) (affirming summary judgment finding no deprivation of liberty interest when corporal returned to patrolman status) (footnote 11 omitted). The court wrote:

> Although Moore was transferred from a position with some supervisory and training responsibilities, he retained his position as a patrolmanCa duty that itself entails significant and important activities. If Moore had been transferred from corporal=s duties to janitorial duties, his loss of status might present the type of loss of tangible interest connected with stigmatizing state action that, under *Paul*, could give rise to a liberty interest.

*Id*. n.11 (citation omitted).

The facts of this case track those of *Moore*. Although neither appellant here was fired, both lost income; Trostle lost $635 per month and Draper lost $384 per month. Trostle lost his supervisory duties and became a subordinate in programs he once supervised. He lost the use of e-mail and the locks on his doors were changed. Draper was assigned statistical duties with which he had no experience and was moved to another building. These facts do not approach the level of demotion described in *Moore*. *See id*. Appellants did not lose a liberty interest.

**Due process**

Appellants complain that they were denied due process when they were demoted without the procedures described in the Department=s manual. As discussed above, the Amandatory@ language of the manual was overcome by the manual=s repeated denials that the procedures therein were mandatory or altered the at-will status of the Department=s employees. A[T]he strictures of due process apply only to the

**8**

threatened deprivation of liberty and property interests deserving the protection of the federal and state constitutions.@ *Spring Branch ISD v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Because we have concluded that appellants were not guaranteed any process by the manual and were not deprived of liberty or property interests, we conclude that they were not deprived of any process due them.

**Slander**

Appellants complain that appellees slandered them by telling people outside the Department untruths about the circumstances of their demotion. A slander claim requires proof that the defendant published a statement that defamed the plaintiff while acting with negligent disregard of whether the statement was true. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Appellants complain specifically only about a statement attributed to Combs.

Appellants complain generally of slander by unspecified appellees. Trostle avers that people inside and outside the agency and state government approached him with knowledge of the accusations against him, even though he had not discussed the accusations. There is no evidence, however, of how these individuals gained knowledge of the accusations. There is no evidence that appellees made the statements that gave these unnamed individuals the knowledge. Summary judgment in favor of all appellees against these nonspecific allegations was appropriate.

Appellants complain specifically that appellee Combs slandered them by telling Shields that appellants had taken a bribe from Zeneca. They support this allegation primarily with an affidavit from Jason Nassour, their former attorney. He averred:

**9**

In conjunction with my efforts to represent Trostle and Draper I had a telephone conversation with Chris Shields. Mr. Shields told me that he had a telephone conversation with Susan Combs and had been told that Trostle and Draper committed a crime, a Class A misdemeanor, for accepting a bribe. He further read the bribery [statute] to me over the telephone and indicated that Susan Combs had reported this matter to the District Attorney=s office but they were holding off prosecuting this matter at Susan Combs= request.

Appellants also refer to Shields=s deposition testimony about a telephone conversation he had with Combs in January or February of 1999. Shields said,

The basic gist of the conversation was that she understood that I had called her office inquiring about the Trostle matter. And I said, yes ma=am that=s why I was calling. I got a couple of phone calls about it and I was wanting to try to figure out, you know, what exactly was going on with that. And what she basically said to me was that she had deliberately and carefully and appropriately dealt with a disciplinary action involving Mark Trostle.

And I said basically thank you very much for that information, and that was basically the conversation. . . .

She did not, to my knowledge, say anythingCto my recollection, say anything specifically about the facts of the case or what was involved or anything.

Shields testified that he learned more details of the situation from others, including Moody, Trostle=s friend who invited him on the hunting trip.

Appellees objected to Nassour=s affidavit at trial contending, among other things, that it was tainted by an offensive use of attorney-client privilege, that the portions pertaining to what Shields told Nassour that Combs said were double hearsay, and that Nassour had no personal knowledge of the

Shields-Combs conversation. In ruling on these objections to Nassour=s affidavit and to affidavits by Trostle and Draper, the district court wrote the following:

> The Court sustains all of Defendants= objections to the affidavit of Plaintiff Trostle, and sustains all of Defendants= objections to the affidavit of Plaintiff Draper. Further, the objection to the affidavit of Jason Nassour with respect to the hearsay objection is overruled for the purpose of attempted impeachment of Chris Shields.

The judgment concludes with a clause denying all relief not expressly granted.

Because the only evidence that Combs slandered appellants appears in Nassour=s affidavit, the competence of the affidavit is critical to the viability of appellants= claims. Affidavits must be made on personal knowledge. Tex. R. Civ. P. 166a(f). The mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for such knowledge. *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761-62 (Tex. 1988). When the substance of an affidavit reveals that it was not made on personal knowledge, the affidavit is not competent summary-judgment evidence. *Dailey v. Albertson=s, Inc.*, 83 S.W.3d 222, 227 (Tex. App.CEl Paso 2002, no pet.); *see also Bauer v. Jasso*, 946 S.W.2d 552, 557 (Tex. App.CCorpus Christi 1997, no writ) (lack of personal knowledge is substantive defect). *But see El Paso Associates, Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 19 (Tex. App.CEl Paso 1990, no pet.) (hearsay is admissible and competent evidence unless properly objected to); *see also Rizkallah v. Conner*, 952 S.W.2d 580, 585 (Tex. App.CHouston [1st Dist.] 1997, no writ) (lack of personal knowledge is defect of form); *Dolenz v. A_ B_*, 742 S.W.2d 82, 83 n.2 (Tex. App.CDallas 1987, writ denied).

Nassour=s affidavit makes it plain that he had no personal knowledge of the defamatory statements Combs allegedly made. She did not make the statements to him and he did not overhear the conversation between her and Shields; Nassour avers that he learned of Combs=s remarks through Shields=s recounting of the conversation. Combs objected and asserts on appeal that Nassour=s statements are double hearsay. The district court, while not expressly sustaining this objection, sustained other objections and then overruled the double-hearsay objection Afor the purpose of attempted impeachment of Chris Shields.@ We are concerned, not with the impeachment of Shields, but with whether the record contains any competent evidence that Combs made defamatory statements. We hold that Nassour=s affidavit, made without personal knowledge of Combs=s remarks and subject to a hearsay objection, is not competent evidence that she made those remarks. *But see Dolenz*, 742 S.W.2d at 83 n.2 (affidavit recounting conversations is competent summary-judgment evidence when not objected to).

Because there is no competent evidence that Combs made defamatory remarks, the district court did not err by granting summary judgment against the slander claim.

**Conspiracy**

Appellants allege that appellees engaged in a conspiracy to inflict emotional distress and humiliation. They argue on appeal that appellees conspired to deny them due process by failing to follow the Department=s procedures outlined in the policy. AA civil conspiracy is generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. It is not the agreement itself, but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action.@ *Carroll v. Timmers Chevrolet,*

**12**

*Inc.*, 592 S.W.2d 922, 925 (Tex. 1979). Because none of the actions allegedly conspired upon supports a cause of action, summary judgment is also appropriate against the claim that appellees conspired to commit those actions.

**Remaining issues**

Because we have found that summary judgment is appropriate against all of appellants= causes of action, we need not consider whether appellees were immune from liability in these causes of action. Similarly, because the information in appellants= affidavits excluded by the district court does not alter our conclusions regarding the issues considered above, we need not consider whether the district court erred by sustaining objections and excluding the information.

## CONCLUSION

Having considered all necessary issues and resolved them in favor of the judgment, we affirm the judgment.

Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: April 3, 2003