Affirmed and Memorandum Opinion filed May 3, 2005









Affirmed and Memorandum Opinion filed May 3, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00748-CV

____________

 

THE ESTATE OF
FRANKLIN JOHNNY GAJEWSKY, Appellant

 

V.

 

JOHN HANCOCK LIFE
INSURANCE COMPANY, ROBERT B. CHARRON D/B/A CHARRON AGENCY, AND THE CITY OF
HOUSTON,
Appellees

 



 

On Appeal from the Probate
Court No. 1

Harris County, Texas

Trial Court Cause No. 336,766-401

 



 

M E M O R A N D U M   O P I N I O N

This case involves a dispute over the
proper amount of life insurance proceeds. 
The Estate of Franklin Johnny Gajewsky appeals from summary judgments
granted to John Hancock Life Insurance Company, Robert B. Charron d/b/a Charron
Agency, and the City of Houston in the Estate’s lawsuit against them.  The Estate sued the appellees alleging breach
of contract and violation of article 21.21 of the Texas Insurance Code.  On appeal, the Estate contends that the
existence of material issues of fact precludes summary judgment.  We affirm.








Factual Background

Franklin Gajewsky retired from his
employment with the City of Houston in 2002. 
As a City employee, he was covered by a group life insurance policy
underwritten by John Hancock.  Under the
terms of the policy in effect at the time of Gajewsky’s retirement, the City
paid the premiums for “basic life” coverage for each employee, providing
coverage in an amount equal to the employee’s annual salary, rounded to the
nearest $1,000.  At the time of his
retirement, Gajewsky’s annual salary was $36,000.  Also under the policy, employees were
entitled to obtain additional or supplemental coverage by paying additional
premiums.  The summary judgment record is
somewhat inconsistent on this issue, but it appears that Gajewsky declined the
additional coverage on the two occasions he was permitted to enroll.[1]

The group policy provided that a retiree
could elect to continue basic life coverage of $5,000 if the retirement date
was on or after January 1, 1990.[2]  The policy also contained a “conversion
privilege” that permitted employees to convert the group policy to an
individual policy upon retirement.  In
order to effect conversion, a retiree was required to submit a written
application and pay the first month’s premium directly to John Hancock within
31 days following the date of retirement. 
The policy resulting from conversion could not be for greater coverage
than the employee had at the time of retirement (either $36,000 or $77,000 for
Gajewsky).  The rates for the converted
policy would be based on the rates currently used by John Hancock at the time
of issuance.








On January 8, 2002, prior to retirement,
Gajewsky completed a City of Houston Retiree Basic Life Insurance Form
(hereinafter “the Form” or “the Basic Life Insurance Form”).  On the Form, Gajewsky checked a box next to
the following statement:  “I have elected
to retain $5,000 basic life insurance coverage for myself.  I authorize my Pension System to deduct the monthly
premium for the coverage from my pension check.”








Approximately four months later, Gajewsky
received a Notice of Conversion Privilege (hereinafter “the Notice”) provided
to him by the City.[3]  The Notice contains a “Part A” and a “Part
B.”  Part A, which was to be completed by
a “life administrator or human resources liaison,” indicates that as of October
1, 1998, Gajewsky was enrolled in $36,000 in “Basic Coverage” and $41,000 in
“Voluntary Coverage.”[4]  It further states that group coverage would
terminate on April 15, 2002.  Part B is
entitled “Request For Quotation To Be Completed By Person Requesting Conversion
Information.”  It contains blanks for
personal information and the amount of coverage the person wishes to
convert.  It specifies that “[y]ou can
convert all or any portion of your coverage” and “[u]pon receiving this form,
we will send you coverage information, premium rates and application/enrollment
forms.”  Part B was not filled in.  The reverse side of the Notice also instructs
that “[y]ou can convert any amount up to the benefit level you had under the
group plan.”  It states that “[t]o
receive a costs and benefits quotation” the employee needs to “[c]omplete all
information” in Part B.  It further
states that “[c]onversion rights will expire unless the completed form is
mailed to The John Hancock Houston Charron Agency” within 31 days of the date
on which group coverage terminates or 15 days from the date the retiree
receives the Notice, whichever is later. 
Lastly, the Notice states that any questions on how to complete the
Notice should be directed to “the Charron Agency.”[5]

Although Gajewsky apparently did not fill
in any information on the Notice and the record does not contain an application
for conversion coverage (as was required for conversion by both the group
policy and the Notice), the Estate contends that Gajewsky did file an
application.[6]  In support of this assertion, the Estate
filed affidavits by David Nitsch, Gajewsky’s son-in-law.

Gajewsky retired in April 2002.  On April 15, 2002, the Houston Municipal
Employees Pension System informed him by letter that $1.25 would be deducted
from his monthly pension check for life insurance premiums.  Gajewsky died on January 1, 2003.  Subsequently, John Hancock tendered a check
to his beneficiary, his daughter, in the amount of $5,001.71.

The Estate sued John Hancock, Charron, and
the City, claiming initially that each of the defendants breached their
agreement with Gajewsky.  Charron and the
City filed motions for summary judgment, and the trial court granted the
motions.  John Hancock filed its motion
for summary judgment, but before the court ruled on it, the Estate amended its
pleadings to allege a violation of article 21.21 of the Insurance Code.  Then, in succession, the court granted John
Hancock’s original motion, John Hancock filed a second motion contesting the
Insurance Code allegation, and the court granted the second motion.








John Hancock

On appeal, the Estate contends that the
trial court erred in granting summary judgment favoring John Hancock on both
the breach of contract and article 21.21 claims.  We address each contention in turn.

In its Third Amended Original Petition,
the Estate pleaded breach of contract against John Hancock.  In order to prove a breach of contract, a
plaintiff must demonstrate:  (1) the
existence of a valid contract,  (2)
performance or tendered performance by the plaintiff,  (3) breach of the contract by the defendant,
and (4) damages sustained by the plaintiff as a result of the breach.  Renteria v. Trevino, 79 S.W.3d 240,
242 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Specifically, the Estate alleged that (1)
Gajewsky entered into a written agreement with John Hancock, (2) John Hancock
was obligated under the agreement to convert the insurance policy to an
individual plan, and (3) John Hancock failed to fulfill its obligations,
including the obligation to pay $77,000 in life insurance proceeds upon
Gajewsky’s death.[7]

John Hancock filed a no-evidence motion
for summary judgment, alleging that the Estate could produce no evidence that
Gajewsky activated the conversion privilege or that John Hancock breached any
obligation to Gajewski.[8]  We utilize the normal standards in reviewing
the grant of a no-evidence summary judgment. 
See Tex. R. Civ. P.
166a(i); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex.
2003).








In its response to the motion, the Estate
made numerous conclusory arguments, claiming that there was a contract
regarding insurance policies, premiums were withheld from Gajewsky’s pension
checks, the defendants were obligated to convert the group policy to an
individual policy, Gajewsky submitted a timely application for conversion, John
Hancock failed to pay the correct proceeds, and John Hancock failed to provide
competent summary judgment evidence. 
Attached to the response was (1) an affidavit by David Nitsch,
Gajewsky’s son-in-law, (2) the letter from the Pension System informing
Gajewsky that $1.25 was being withheld from his monthly check for life
insurance, and (3) the Notice of Conversion Privilege form.  On appeal, the Estate also makes an argument
based on Gajewsky’s completion of the Basic Life Insurance Form, which was
attached to John Hancock’s motion.  We
discuss each item in turn.

At the beginning of his affidavit, Nitsch
avers generally that he has personal knowledge of the facts stated in the
affidavit.  He then says that he
“discussed these facts with employees and agents of the City of Houston and
with Frank Gajewsky.”  Beyond this
general, introductory statement, Nitsch provides no basis for his statements in
the affidavit.  Nitsch avers

Per the terms of the Group Policy,
Franklin Johnny Gajewsky submitted a written application and paid the first
month’s premium within the 31 days after the date of his retirement and timely
paid all other premiums due.  The City
and John Hancock were aware that Gajewsky was paying insurance premiums on the
$77,000 life insurance policy.

Franklin Johnny Gajewski never
received any notice of conversion rights. 
The City failed to give adequate notice by failing to sign and date the
notice of conversion.  John Hancock was
aware that Gajewsky did not receive meaningful and effective notice of the
conversion.  However, in spite of the
City’s failure to provide the forms, Franklin Johnny Gajewsky did provide an
application to convert his group life policy to the City.

Franklin Johnny Gajewsky and
Defendants entered into a contract (the “Contract”) in connection with the
issuance of insurance policies to Gajewsky as an employee and a retiree.  Monthly premiums were withheld from the
Gajewsky’s [sic] monthly pension check to pay for the insurance.  Upon retirement, certain insurance rights
vested and Defendants became obligated to convert the policies to individual
plans.  Defendants failed to fulfill
their obligation and ignored Plaintiff’s [sic] rights and Defendants’ duties to
Plaintiff [sic].  Defendants Hancock and
Charron were designated by the City as agents for the City.








On Franklin Johnny
Gajewsky’s death, Defendants failed to pay to Gajewsky’s beneficiaries $77,000
which was the face amount of the policy. 
Plaintiff is entitled to recover from Defendants . . . the sum of
$77,000 . . . .

To constitute valid summary judgment
proof, an affidavit must be made on personal knowledge, set forth facts as
would be admissible in evidence, and show affirmatively that the affiant is
competent to testify to the matters stated therein. Tex. R. Civ. P. 166a(f). 
The mere recitation that the affidavit is based on personal knowledge is
inadequate if the affidavit does not positively show a basis for such
knowledge.  Radio Station KSCS v.
Jennings, 750 S.W.2d 760, 761-62 (Tex. 1988); Leavings v. Mills, ___
S.W.3d ___, ___, 2004 WL 1902536, at *7 (Tex. App.—Houston [1st Dist.] 2004, no
pet. h.); Trostle v. Combs, 104 S.W.3d 206, 214 (Tex. App.—Austin 2003,
no pet.).  Furthermore, affidavits
consisting only of conclusions are insufficient to raise an issue of fact.  Brownlee v. Brownlee, 665 S.W.2d 111,
112 (Tex. 1984); Skelton v. Comm’n for Lawyer Discipline, 56 S.W.3d 687,
692 (Tex. App.—Houston [14th Dist.] 2001, no pet.); see also New Times, Inc.
v. Isaacks, 146 S.W.3d 144, 165 (Tex. 2004) (holding affidavits were not
conclusory when they provided detailed explanations and descriptions of factual
assertions).  Nitsch’s affidavit is
comprised of legally and factually conclusory statements (e.g., “Upon
retirement, certain insurance rights vested and Defendants became obligated . .
. ,” “Gajewsky submitted a written application”) and contains no attempt to
show a basis for those conclusions.[9]  Accordingly, the trial court did not err in
holding that this affidavit amounted to no evidence capable of defeating
summary judgment.








The letter from the Pension System
demonstrates only that $1.25 was being deducted from Gajewsky’s monthly pension
check.  It does not support the
conclusion that Gajewsky filed an application to convert the group policy to an
individual policy in the amount of $77,000, particularly in light of the
undisputed evidence that he elected to retain the $5,000 basic life coverage
indicated on the Basic Life Insurance Form and that he was informed that an
amount would be deducted from his pension check for this retained coverage.[10]

Regarding the Notice of Conversion
Privilege, while it may constitute some evidence that there was a contract at
one time between Gajewsky and somebody for insurance, it is no evidence that
John Hancock was obligated to convert the group policy to an individual policy
upon Gajewsky’s retirement, that such conversion occurred, or that John Hancock
breached any contract with Gajewsky.  To
the contrary, the Notice explicitly states that “[t]o receive a costs and
benefits quotation” the employee needed to “[c]omplete all information” in Part
B, and “[u]pon receiving this form, we will send you coverage information,
premium rates and application/enrollment forms.”  It further states that “[c]onversion rights
will expire unless the completed form is mailed . . . within a specified number
of days.”  Part B of the Notice was left
blank, and the Estate offered no evidence suggesting that Gajewsky took any of
the steps necessary to convert the group policy to an individual policy in the
amount of $36,000 or $77,000.








On appeal, the Estate further suggests
that Gajewsky’s completion of the Retiree Basic Life Insurance Form effectively
converted the group policy to an individual policy.  The Estate highlights the fact that both the
Form and the Notice of Conversion Privilege mentioned basic life insurance coverage.[11]  The Estate’s argument fails for several
reasons.  To begin with, the Basic Life
Insurance Form clearly was intended to apply to the $5,000 in basic life
coverage that the group policy indicates a retiree can retain upon
retirement.  At no point does it
reference any amount greater than that, nor does it reference conversion of
group life insurance to an individual policy. 
Second, the Estate admits that the Form was completed four months prior
to Gajewsky’s receipt of the Notice, so Gajewsky could not reasonably have
believed that this earlier document fulfilled the requirements of the request
for quotation and subsequent application for conversion mentioned in the later
Notice.[12]  Third, the Notice repeatedly states that the retiree
may convert up to the amount of coverage that he had upon retirement,
and it states that benefits may not be the same as they were before
retirement.  Thus, even if the Form is
considered an application for conversion, it was an application to convert only
$5,000 in coverage.  There is no dispute
in this case regarding the $5,000 in coverage. 
John Hancock admits it owed Gajewsky’s beneficiary $5,000, and it has
tendered payment of that amount.[13]  Accordingly, the Estate’s argument that the
Form effectively converted the policy is without merit.

Because the Estate failed to present any
evidence that a contract for conversion existed between Gajewsky and John
Hancock, John Hancock breached any such contract, or the Estate suffered
damages due to any such breach, the trial court did not err in granting summary
judgment favoring John Hancock on the breach-of-contract cause of action.  See Tex.
R. Civ. P. 166a(i); Group Life & Health Ins. v. Brown, 611
S.W.2d 476, 477-79 (Tex. Civ. App.—Tyler 1980, no writ) (holding there was no
evidence that decedent had coverage or was induced to believe that she had
coverage when there was no evidence that decedent had completed a conversion
application).








In its Fourth Amended Original Petition,
the Estate alleged that John Hancock violated article 21.21 of the Texas
Insurance Code by (1) making a representation that misled Gajewsky to a false
conclusion regarding insurance, or (2) failing to state material facts that
were necessary to prevent information that had been provided from becoming
misleading.  See Tex. Ins. Code Ann. art. 21.21, § 4
(Vernon Supp. 2004).  John Hancock filed
a second motion for summary judgment asserting, among other things, that there
was no evidence that (1) any statements or representations misled Gajewsky to
false conclusions, (2) John Hancock had any duty to provide additional
information, (3) it failed to state any material facts necessary to render
information not misleading, or (4) it failed to fulfill any obligation to
Gajewsky.  The trial court granted the
motion.

The Estate specifically contends that the
fact that the Basic Life Insurance Form mentioned $5,000 in basic coverage and
the Notice of Conversion Privilege mentioned $36,000 in basic coverage was
misleading and caused Gajewsky to believe that he had converted the group
policy to an individual policy (at least in the amount of $36,000) by
completing the Form.  This argument is substantially
similar to the argument made on appeal in regard to the breach-of-contract
claim.  It also fails for the same
reasons: (1) the Form clearly applied only to the $5,000 basic life coverage a
retiree was permitted to retain under the group policy and does not reference
any greater amount or any conversion of group life to an individual policy; (2)
Gajewsky could not reasonably have believed that the Form he completed four
months earlier met the requirements of the request for quotation and
application for conversion specified in the Notice; and (3) the Notice
repeatedly states that the retiree may convert up to the amount of
coverage that he had upon retirement; thus, even if the Form is considered an
application for conversion, it was an application to convert only $5,000 in
coverage, an amount which is not in dispute.








Because the Estate failed to present any
evidence that (1) any statements or representations misled Gajewsky to false
conclusions, or (2) John Hancock had any duty to provide additional information
to render previous information not misleading, the trial court did not err in
granting summary judgment on the Estate’s article 21.21 claims.  See Tex.
R. Civ. P. 166a(i).

The City of Houston

Next, we consider the summary judgment
favoring the City of Houston.  In its
Third Amended Original Petition, the Estate pleaded breach of contract against
the City.  Specifically, the Estate
alleged that (1) Gajewsky entered into a written agreement with the City, (2)
the City was obligated to convert the insurance policy to an individual plan,
(3) the City failed to fulfill its obligations, including the failure to pay
proceeds after Gajewsky’s death, and (4) Charron and John Hancock were
designated agents of the City.

The City filed a traditional and
no-evidence motion for summary judgment. 
See Tex. R. Civ. P. 166a(c),
(i).  In the motion, the City asserted,
among other things, that (1) the group policy required that a written
application for conversion be submitted within 31 days after retirement, (2)
the City provided Gajewsky with notice of his right to convert the group policy
to an individual policy, and (3) Gajewsky did not apply to convert his
policy.  The motion also asserted that
the Estate could produce no evidence that Gajewsky applied to convert his
policy and thus created a contract.  In
its reply to the Estate’s response, the City emphasized that the Estate could
not prove the existence of a contract. 
See Renteria, 79 S.W.3d at 242 (stating elements of breach of
contract cause of action).

The City attached numerous documents to
its motion, including the affidavit of Gerri Walker; a copy of the group
policy; the Basic Life Insurance Form; the Notice of Conversion Privilege; and
a copy of the letter from John Hancock transmitting insurance proceeds of
$5,001.71 to Gajewsky’s beneficiary.








In its response, the Estate again made
numerous conclusory statements substantially similar to those made in response
to John Hancock’s motion.  Attached to
the response, the Estate provided another affidavit by Nitsch.  Again, this affidavit mostly reiterates the
conclusory statements made in the response and provides no basis for the
factual assertions made.  Accordingly, it
constitutes no evidence of those assertions.  See Trostle, 104 S.W.3d at 214 (holding
that mere recitation that an affidavit is based on personal knowledge is
inadequate if the affidavit does not positively show a basis for such
knowledge); Skelton, 56 S.W.3d at 692 (holding that affidavits
consisting only of conclusions are insufficient to raise an issue of fact).

As discussed in detail above, the summary
judgment record establishes (and the Estate acknowledges) that to obligate
anyone to convert or aid in converting the group policy to an individual
policy, Gajewsky had to submit a written application for conversion and make
the first premium payment within 31 days of his retirement.  As also discussed above, in relation to the
summary judgment favoring John Hancock, the Estate has produced no evidence
that Gajewsky completed or filed such application or that the group policy was
converted to an individual policy; thus, the Estate has failed to provide any
evidence of the existence of a contract obligating the City to convert the
policy, aid in converting the policy, or pay proceeds.  See Brown, 611 S.W.2d 476,
477-79.  Accordingly, the trial court did
not err in granting summary judgment favoring the City.[14]

Robert Charron








Lastly, we consider the summary judgment
favoring Robert Charron.  In its Third
Amended Original Petition, the Estate pleaded breach of contract against
Charron.  Specifically, the Estate alleged
that (1) Gajewsky entered into a written agreement with Charron, (2) Charron
was obligated to convert the insurance policy to an individual plan, (3)
Charron failed to fulfill his obligations, including failing to pay proceeds
after Gajewsky’s death, and (4) Charron was an agent of the City.[15]  In his motion for summary judgment, Charron
asserted, among other things, that (1) he did not have a contract with Gajewski
to obtain life insurance for him, and (2) at the time of Gajewsky’s retirement,
he (Charron) was no longer in the business of assisting City employees in
converting their life insurance coverage. 
The trial court granted summary judgment without specifying the grounds
therefor.  We utilize the normal
standards in reviewing this grant of traditional summary judgment.  See Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Prop.  Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  A defendant, as movant, is
entitled to summary judgment if he (1) disproves at least one element of
plaintiff’s theory of recovery, or (2) pleads and conclusively establishes each
essential element of an affirmative defense thereby rebutting the plaintiff’s
cause of action.  Buck v. Blum,
130 S.W.3d 285, 288 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In an affidavit attached to his motion for
summary judgment, Charron averred that prior to August 1, 2000, he was a
general agent for John Hancock, and, as such, part of his duties involved
helping City employees to convert their group life insurance into individual
policies.  He retired as an agent for
John Hancock on August 1, 2000, and since that time has not had any dealings
with City employees wanting to convert life insurance.  He acknowledged that his agency’s name and
phone number were printed on the back of the Notice Gajewsky received, but he
said that it was not a working number on April 15, 2002.  He further stated that neither he nor anyone
from his agency (1) entered into a written contract for the issuance of life
insurance with Gajewsky, (2) dealt with Gajewsky at any time concerning the
conversion of his insurance, or (3) withheld or received money from Gajewsky’s
pension check for any insurance.  Lastly,
he averred that Gajewsky never requested any assistance from anyone at his
(Charron’s) agency in converting insurance.








Testimonial statements by an interested
witness may be the basis for a summary judgment when the statements are clear,
positive, and direct, otherwise credible and free from contradiction and
inconsistency, and could have been readily controverted.  Tex.
R. Civ. P. 166a(c); Casso v. Brand, 776 S.W.2d 551, 558 (Tex.
1989).  We find the statements in
Charron’s affidavit to be clear, positive, and direct.  He specifically states that by the time the
Estate claims he became obligated to convert Gajewsky’s policy, he (Charron)
had been retired from such work for two years. 
On that basis, and his personal knowledge, he states that he did not
enter any contract with Gajewsky regarding conversion of his policy.  We also find that the statements are
otherwise credible and free from contradiction and inconsistency.  Although, obviously, Gajewsky himself was
unavailable to controvert Charron’s statements, we find that the statements, if
untrue, could have been readily controverted by documentary or testimonial
evidence establishing that Charron had not retired or was in fact obligated to
aid Gajewsky in converting his policy.

In its response, the Estate made numerous
conclusory arguments, including that whether Charron was retired is a fact
question, that Charron is still receiving commissions from his direct and
residual involvement in the sale of insurance to “Plaintiff [sic],” that a fact
issue exists “regarding . . . Gajewsky’s allegations [sic] that he and
Defendants entered into a written contract,” and that Charron and the City
“represented to Plaintiff [sic]” that Charron was the agent for the City and
John Hancock.  Attached to the response
was another affidavit by Nitsch.  The
response also references the Notice of Conversion Privilege on which it states
that if the retiree had any questions, he or she may call the Charron Agency.

Nitsch’s affidavit merely repeats the
factual and legal conclusions contained in the Estate’s response.  Although he avers that it is based on
personal knowledge, Nitsch fails to show a basis for such knowledge.  Accordingly, we find that the trial court did
not err in determining that Nitsch’s affidavit was insufficient to controvert
Charron’s affidavit.  See Trostle,
104 S.W.3d at 214; Skelton, 56 S.W.3d at 692.

Further, the fact that the Notice of
Conversion Privilege contained Charron’s name does not by itself constitute
evidence that Charron was not retired or had an obligation to help Gajewsky
convert his policy.  There is no evidence
that Charron gave permission for his name to be on the Notice or was even aware
that his name was still listed.  Further,
there is no evidence that Charron and Gajewsky had any contact related to the
conversion of the policy or otherwise, or that Gajewsky wanted or attempted to
convert the group policy into an individual policy.








Because the Estate failed to offer any
evidence to controvert Charron’s affidavit, the trial court did not err in
awarding summary judgment favoring Charron on the breach of contract
claim.  See Tex. R. Civ. P. 166a(c).[16]


The trial court’s judgment is affirmed.

 

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed May 3, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.











[1]  The record
contains two enrollment forms on which Gajewsky declined additional coverage;
it also contains the affidavit of Gerri Walker, Division Manager for the
Employee Benefits Division of the City’s Human Resources Department, in which
she states that Gajewsky declined the additional coverage.  However, the record also includes a Notice of
Conversion Privilege, discussed in detail in the text, on which it was written
that at the time of his retirement Gajewsky was enrolled in $41,000 in
“voluntary coverage.”  At oral argument,
counsel for the City suggested that this entry was the result of a clerical
error.





[2]  If the
retirement date was before January 1, 1990, the retiree could elect to continue
$2,000 or $5,000 in basic coverage, depending on how the employee enrolled in
the life insurance benefit.





[3]  In her
affidavit, Walker states that the Notice was given to Gajewsky on April 15,
2002; however, there is no other evidence that he received it on this date, and
it has a stamped “received” date of April 3, 2002.  This date appears to be the day the City’s
benefits department received the Notice, so it would appear unlikely that
Gajewsky received it after that date.  The
Estate acknowledges, however, that Gajewsky completed the Retiree Basic Life
Insurance Form some four months before he received the Notice of Conversion
Privilege.

Gajewsky signed the Notice below the
following statement:  “I acknowledge that
the City of Houston notified me of my privilege to convert all or part of the
life insurance coverages for which I enrolled. 
This notice was given to me within 31 days of my termination of
employment.”  





[4]  The Notice was
supposed to be signed and dated by the administrator or liaison but was not.





[5]  The record
contains two versions of the reverse side of the Notice.  One version, provided by the Estate in its
discovery responses, indicates that to obtain a quote, a retiree should contact
“John Hancock Life Insurance Co.” in Albuquerque, New Mexico.  The other version, attached to the City’s
motion for summary judgment, indicates that to obtain a quote, a retiree should
contact “The John Hancock Houston Charron Agency.”  There is neither an explanation in the record
for this discrepancy, nor any clear indication of which version was actually on
the reverse side of the Notice signed by Gajewsky (the front sides appear
identical even in regard to handwriting).





[6]  In its
responses to the motions for summary judgment, the Estate asserted generally
that Gajewsky filed an application.  In
its appellate brief, the Estate suggests that the Basic Life Insurance Form
Gajewsky completed four months prior to receiving the Notice was an application
for conversion.  Both the general and the
specific argument will be addressed below.





[7]  Most of these
allegations were made in general form against the named “Defendants,” which
included John Hancock, Charron, and the City.





[8]  Essentially,
John Hancock contested the evidence on contract existence, breach, and damages.  On appeal, John Hancock acknowledges that a
contract existed obligating it to pay $5,000 in life insurance proceeds upon
Gajewsky’s death, but it denies that a contract existed obligating it to
convert the group policy to an individual policy or to pay proceeds beyond
$5,000.  As mentioned, John Hancock
tendered $5,001.71 to Gajewsky’s beneficiary after his death.





[9]  As mentioned,
Nitsch states generally that he “discussed these facts” with Gajewsky and
representatives of the City, but he does not claim that this is how he learned
any of the purported facts.  We also note
that large portions of the affidavit are verbatim copies of portions of the
Estate’s pleadings.





[10]  On appeal, the
Estate suggests that upon receiving the Pension System’s letter, Gajewsky could
have reasonably believed that he had done all that he was required to do to
convert his $77,000 in group coverage to an individual policy.  However, the Estate offers no basis on which
Gajewsky could have believed that the $1.25 deducted monthly was for more than
the $5,000 he elected to retain in the Basic Life Insurance Form.  Indeed, a coverage election form from 1997
(in which he waived coverage) indicates that the premium for $72,000 in
coverage would have been $52.56 paid bi-weekly (or $105.12 per month).





[11]  The Form
referred to $5,000 in basic life coverage, whereas the Notice referred to
$36,000 in basic life coverage.





[12]  The group
policy specifically states that the retiree must submit a written application
and pay the first month’s premium directly to John Hancock within 31 days
following the date of retirement.





[13]  In making its
argument, the Estate relies on several cases holding that when an insurer
collects and retains premiums it is estopped from denying the existence of an
insurance policy.  See Union Nat. Bank
of Little Rock v. Moriarty, 746 S.W.2d 249, 252 (Tex. App.—Texarkana 1987,
writ denied); Farmers Mut. Protective Ass’n of Tex. v. Pack, 465 S.W.2d
228, 230 (Tex. Civ. App.—Austin 1971, writ ref’d n.r.e.); Am. Ins. Co. v.
Parker, 377 S.W.2d 213, 215 (Tex. App.—Austin 1964, writ ref’d
n.r.e.).  These cases are inapposite
here.  John Hancock does not deny that
Gajewsky retained $5,000 in coverage, and nothing in these cases supports the
Estate’s argument that he converted $36,000 or $77,000 in coverage.   Indeed, at least one of the cases, Moriarty,
states that estoppel cannot be used to “change, rewrite and enlarge” the
coverage.  746 S.W.2d at 252.  Thus, even if it could be said that John
Hancock was estopped to deny coverage, that coverage would only be in the
amount of $5,000 as requested by Gajewsky.





[14]  On appeal,
although the Estate discusses alleged conduct by the City in relation to the
article 21.21 claims against John Hancock (discussed above), the Estate does
not argue that the trial court erred in granting judgment favoring the City in
light of the article 21.21 claims in the Fourth Amended Original Petition.  At oral argument, counsel for the Estate
explicitly denied that it was challenging the summary judgment as to the
article 21.21 claims against the City.





[15]  Despite
asserting agency as a fact, the pleading raised no liability claims based on
the purported agency.





[16]  The Estate
does not contend on appeal that the trial court erred in granting summary judgment
in Charron’s favor on the alleged Insurance Code violations.