# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00640-CV

**James W. Shrieve, Appellant**

**v.**

**Texas Parks and Wildlife Department, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN403181, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the district court's order denying appellant's request for a temporary injunction to restore his eligibility to obtain managed lands deer permits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2004-05). We will affirm the order.

## BACKGROUND

This appeal presents issues relating to a landowner's ability to participate in the Texas Parks and Wildlife Department's managed lands deer permit (MLDP) program, through which landowners can expand deer hunting rights on their property beyond that which state law generally allows. Some background regarding the MLDP program is helpful in placing the present appeal in context.

**The MLDP program**

The Department has the statutory responsibility of managing the state's deer population. *See* Tex. Parks & Wild. Code Ann. §§ 12.001, 61.002, 61.051, 61.054 (West 2002). An important aspect of deer population management is hunting, which is both a traditional recreational pastime for many Texans and a lucrative commercial activity for Texas landowners who lease their property for hunting. Through the statutes and regulations administered by the Department, Texas endeavors to strike a balance among the goals of preventing deer overpopulation, fostering hunting as a recreational and economic activity, and preventing excessive depletion of the deer population. *See id*.

To balance these interests, Texas law allows deer hunting during fixed seasons each year, requires each hunter to acquire a hunting license from the Department, and places a "bag limit" on the number of deer each hunter may kill each year.[1] *See id*. § 42.002 (West Supp. 2004-05); 31 Tex. Admin. Code §§ 65.38, 65.42 (2004). Although each individual hunter is responsible for complying with license requirements and bag limits, this general regime places no limitations on the total number of deer that can be killed on a given property each year or season. *See id*. § 42.002; 31 Tex. Admin. Code §§ 65.38, .42.

The Department also administers a Wildlife Management Plan ("WMP") program whereby individual landowners may opt into a different regulatory scheme governing hunting on their property in exchange for agreeing to more comprehensive wildlife and habitat management by the Department. *See* 31 Tex. Admin. Code § 65.25 (2003). Among the management measures

---

[1] The Department issues about 400,000 deer-hunting licenses each year.

contained in WMPs are harvest quotas for wildlife. *See id*. WMPs are prepared free of charge by Department biologists based on information the landowner must supply. In exchange for agreeing to a WMP, landowners may receive property tax breaks and, with respect to deer, eligibility to participate in the MLDP program. *See id*. §§ 65.25-.26. A current WMP, specifying a harvest quota for deer, must be approved and on file before a landowner is eligible for the MLDP program. *See id*. Landowners may participate at varying "levels" of the MLDP program with different requirements of management measures and corresponding benefits. To participate at "level three" of the MLDP program, for example, a landowner agrees to achieve at least four habitat management recommendations within three years. *Id*. § 65.26. In exchange, the landowner receives benefits including an extended season on his or her property for hunting deer with guns.

Under the MLDP program, the Department issues a participating landowner a certain number of permits that each entitle the bearer to kill one deer. *See id*. § 65.26(d). Landowners have discretion to distribute some or all of their annual MLD permits to third parties, such as persons paying to hunt on their property. *Id*. § 65.26(c). The Department represents that the MLD permits supersede the standard bag limits, allowing a bearer to kill as many deer as he or she wishes as long as he or she has unused MLD permits. Moreover, hunters bearing MLD permits can hunt on the participating landowner's property during both the standard deer season and, unlike other locations, during any extended period. However, the total number of MLD permits issued to the landowner each year serves as a cap on the total annual number of deer killed on the property. Once the landowner's annual allotment of MLD permits is extinguished, regardless of when this occurs, deer hunting on the property must cease for the year. *Id*.

3

A landowner may apply for MLD permits by submitting to the Department, by August 15 of each year, deer-population or deer-harvest data. *See id*. § 65.25. A Department biologist determines how many MLD permits to issue (if any) based on the capacity of the habitat and the estimated deer population. The Department may deny a request for MLD permits if the landowner has allowed too many deer to be killed on the property or if the landowner does not comply with his or her WMP. *See id*. § 65.26(g). Denial of a request for MLD permits does not affect the landowner's ability to hunt on his own property or to allow commercial hunting on the property during the standard open season.[2] *Compare* 31 Tex. Admin. Code § 65.26 *with* Tex. Parks & Wild. Code Ann. § 42.0175 (West 2002).

**Proceedings below**

Appellant James Shrieve is the general or managing partner of the Shrieve Limited Partnership, which owns a 2,900-acre ranch in Kimble County near Junction. Shrieve uses the property for commercial hunting purposes. He has participated in the WMP for several years and in the MLDP program since 2000. During the 2003 hunting season, Shrieve had a level three permit that authorized hunting on his property between the Saturday nearest September 30 through the last Sunday in January and during any open season. *See id*. § 65.26(b)(3). This had the effect of extending deer season on Shrieve's property beyond the standard season by approximately two-and-a-half months, creating commercial hunting opportunities for the ranch.

---

[2] Each individual hunter may still apply for and receive the normal hunting license with permits that expire at the end of the standard annual hunting season.

The precise events from which this appeal originated are somewhat unclear from the record. On August 20, 2004, after Shrieve's most recent MLD permits expired, the Department sent Shrieve a letter stating that it had determined that activities on his property were inconsistent with his approved WMP plan, and declaring him ineligible to participate in the MLDP program for the next three years. Specifically, the Department alleged that Shrieve released additional deer on his land—undermining the goal of reducing the deer population set out by Shrieve's WMP—without notifying the supervising Department biologist.[3] Shrieve disputes the Department's allegations. The letter also stated that Shrieve could appeal the permit denial, and included contact information. The Department admits that no notice or opportunity for hearing was given prior to its issuance of the letter.

Apparently, Shrieve and his attorney participated in an appeal before the Wildlife Divisions Appeals Panel.[4] On September 15, 2004, the Panel announced that it would affirm the Department's decision, and declared Shrieve ineligible to participate in the MLDP program for a three-year period beginning with the 2004-2005 hunting season. The director of the wildlife division stated that the Panel

was presented no new arguments to refute the following points:

---

[3] If true, the fact that additional deer had been intentionally released to a tract that was targeted for population reduction would be important information for the biologist issuing permits and determining how to properly achieve reduction goals. The Department alleges that failure to notify the biologist would constitute noncompliance with the WMP.

[4] No record of the administrative appeal proceeding is included in the record. There was testimony at the temporary injunction hearing, however, that the Panel consisted of the Department's division director, the director of the big game program, the whitetail deer program coordinator, and the region director.

(1) The population goal of the Wildlife Management Plan (WMP), agreed upon by you and Fielding Harwell [the Department biologist], is '8-10 acres per deer';

(2) You and others in your party acknowledged that population reduction was necessary to achieve the population goal;

(3) TWPD records indicate that over 400 deer were added to the property over a three-year period although the population reduction goal had not been achieved;

(4) The TPWD biologist in charge of the WMP was not notified of these stockings that were in direct contradiction to the WMP.

The panel also noted that Shrieve was allegedly "recently convicted on 29 counts of possessing deer without a valid permit."

Shrieve appealed the Panel's decision to district court, alleging tort claims and requesting a temporary restraining order, temporary injunction, judicial review of the Department's administrative decision, and declaratory relief. Following a hearing, the district court denied Shrieve's request for a temporary restraining order and temporary injunction. This interlocutory appeal followed.

## DISCUSSION

Shrieve complains that the district court abused its discretion in refusing to issue a temporary injunction staying enforcement of the Department's decision. In his first issue, Shrieve alleges that the Department acted outside its statutory authority by violating chapter 12 of the parks and wildlife code and the Administrative Procedures Act ("APA") when it sent the August 2004 letter without first giving him notice and an opportunity for a hearing. *See* Tex. Parks & Wild. Code

6

Ann. § 12.501 (West 2002). In his second issue, Shrieve contends that the Department's actions violated his due process rights. *See* U.S. Const. amend. XIV § 1; Tex. Const. art. 1 § 19.

**Standard of review**

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*. Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id*. A failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Gonzalez v. Reliant Energy, Inc.*, 48 Tex. Sup. Ct. J. 462, 2005 Tex. LEXIS 212, at *24-25 (Tex. March 11, 2005).

**Statutory right to notice and hearing**

The Department must give notice and an opportunity for hearing before suspending or revoking an original or renewal permit or license on certain grounds. *See* Tex. Parks & Wild. Code Ann. § 12.501 (West 2002). This notice and hearing are governed by the requirements of the contested case provisions in sections 2001.052 and 2001.054 of the government code. *See id*. § 12.502 (West 2002); *see also* Tex. Gov't Code Ann. §§ 2001.052, .054 (West 2000). We conclude that these requirements do not apply here.

By their unambiguous terms, sections 12.501 and 12.502 only apply to the *suspension* or *revocation* of original or renewal permits or licenses. *See* Tex. Parks & Wild. Code Ann.

7

§§ 12.501, .502. By contrast, the Department is not required by statute to give notice or hearing before it decides to "refuse to issue or transfer an original or renewal license, permit, or tag," and the contested case provisions of the APA do not apply to such decisions. *Id*. § 12.508 (West 2002). However, a party may seek judicial review of such refusals in Travis County district court. *See id*. § 12.506 (West 2002).

We conclude that Shrieve's complaint does not concern a suspension or revocation of permits or licenses, but the Department's failure to issue them. At the time of the Department's actions, Shrive did not have current MLD permits; the most recent permits expired at the end of January 2004.[5] Shrieve argues that even if his MLD permits had expired, the Department's letter still constituted a revocation or suspension—a revocation or suspension of his right to participate in the MLDP program and receive future MLD permits for three years. This argument overlooks the fact that Shrieve had no statutory right to participate in the MLDP program without possessing a current WMP plan. *See id*. §§ 65.25, .26 (2004). WMP plans are only valid for one year, and Shrieve's had expired before the Department's August 2004 letter issued. *See id*.; 31 Tex. Admin. Code § 65.26(b)(3) (level three permit "is valid from the Saturday nearest September 30 through the last Sunday in January and during an open season on the property for which it is issued."). In sum, at the time of the Department's decision, Shrieve had no active license or permit that could have

---

[5] In his reply brief, Shrieve mistakenly argues that section 43.603 of the parks and wildlife code precludes the conclusion that his permits expired. *See* Tex. Parks & Wild. Code Ann. § 43.603 (West 2002) ("permit is valid for a period prescribed by the department of not less than one year"). However, section 43.603 relates to deer management permits rather than MLD permits. *Compare* 31 Tex. Admin. Code §§ 65.131-138 (2004), *with* 31 Tex. Admin. Code §§ 65.25-.26. The two programs are governed by different rules.

been "revoked" or "suspended" by the Department's decision. *See id*. § 12.501 (West 2002). Instead, the Department's challenged action amounts to a decision to refuse to issue an original or renewal license, permit, or tag pursuant to section 12.508. *Id*. § 12.508. Under chapter 12, Shrieve had no right to prior notice and hearing; his sole recourse is judicial review in district court. *See id*. § 12.506 (West 2002).[6]

Nor does the APA independently give rise to a right of Shrieve to prior notice and hearing before the Department made its decision. In the absence of express statutory authority, the APA does not independently provide a right to a contested case hearing. *Eldercare Props., Inc. v. Tex. Dep't of Human Servs*., 63 S.W.3d 551, 557 (Tex. App.—Austin 2001, pet. denied), *reversed on other grounds*, *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 196 (Tex. 2004); *see also Best & Co. v. Texas State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309 (Tex. App.—Austin 1996, writ denied). Rather, its application is limited to contested cases regarding the grant, denial, or renewal of a license that is required to be preceded by notice and opportunity for hearing. Tex. Gov't Code Ann. § 2001.054 (West 2000).

Moreover, in its rules, the Department specifically reserved "the right to deny further issuance of MLD permits" to a landowner who did not abide by the WMP. 31 Tex. Admin. Code § 65.26(g). The penalty for exceeding the harvest quota or violating the WMP is ineligibility to receive MLD permits for three years from the date of denial. *Id*. We conclude that Shrieve had no

---

[6] We do not reach the issue of whether the Department failed to give proper notice of the suspension or denial of a permit via certified or registered mail because we find that there was no active license suspended or denied. Moreover, Shrieve admitted that he received actual notice via regular mail.

current permit subject to section 12.501, the APA did not require notice and a hearing before the Department issued its letter, and the initial decision was authorized by Department rules. Therefore, the district court did not abuse its discretion in refusing to issue the temporary injunction on those grounds. We overrule Shrieve's first issue.

**Due process**

In his second issue, Shrieve alleges that his right to due process under the state and federal constitutions were violated because his "ability to apply for permits amounted to a vested property interest."[7] With respect to procedural due process claims like this, the Texas Supreme Court has found no meaningful distinction between Texas's protection of due course of law and the federal constitution's guarantee of due process. *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *see* U.S. Const. amend. XIV § 1; Tex. Const. art. 1 § 19. Thus, the supreme court has followed contemporary federal due process interpretations of procedural due process issues. *Than*, 901 S.W.2d at 929 (citing *Mellinger v. City of Houston*, 3 S.W. 249, 252-53 (1887)); *see also Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560-61 (Tex. 1985). Although not bound by federal due process jurisprudence, we consider federal interpretations of procedural due process to be persuasive authority in applying our due course of law guarantee. *Than*, 901

---

[7] Shrieve also alleges that the appeals panel did not operate in a fair, honest, or unbiased manner. *See Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 731 (Tex. App.—Austin 2004, pet. filed). Shrieve must overcome the presumption that agency decision makers are fair, honest, and unbiased. *Id*. The record of the administrative appeal is not before us, and Shrieve's mere allegations are insufficient to rebut that presumption with regard to the issues presented in this interlocutory appeal. *See id*.; *see also Vandygriff v. First Sav. & Loan Assoc.*, 617 S.W.2d 669, 673 (Tex. 1981).

S.W.2d at 929. We thus apply a two-part analysis: (1) we must determine whether Shrieve has a property interest that is entitled to procedural due process protection; and (2) if so, we must determine what process is due. *Id.*; *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Collins v. Texas Natural Res. Conservation Comm'n*, 94 S.W.3d 876, 883 (Tex. App.—Austin 2002, no pet.).

To have a property interest in a governmental benefit, a person must have more than a unilateral expectation of it; there must be a legitimate claim of entitlement. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Smith v. Travis County Bail Bond Bd.*, 559 S.W.2d 693, 694 (Tex. Civ. App.—Austin 1977, no writ) (no protected property interest in expired license). "[T]he strictures of due process apply only to the threatened deprivation of liberty and property interests deserving the protection of the federal and state constitutions." *Trostle v. Combs*, 104 S.W.3d 206, 213 (Tex. App.—Austin 2003, no pet); *see Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Additionally, the claim of entitlement must be created by an independent source such as state law. *See id*. An entitlement must stand or fall on the application of rules to facts. *Nelson v. Clements*, 831 S.W.2d 587, 591 (Tex. App.— Austin 1992, writ denied). "To the extent a request appeals to discretion rather than to rules, there is no property." *Id*. (quoting *Scott v. Village of Kewaskum*, 786 F.2d 338, 339-40 (7th Cir. 1986)).

Shrieve admitted that the MLD permit process involves the discretion of the Department and its biologist because they determine when and how many permits should be issued. *See* 31 Tex. Admin. Code Ann. §§ 65.25, .26. The narrow question before us is whether Shrieve possessed a property interest in a MLD permit. Although Shrieve clearly expected to receive MLD

11

permits for the 2004-2005 hunting season, his was merely a unilateral expectation. Based on the statutes and rules we have examined, we hold that Shrieve's expectation of MLD permits falls short of the type of right or property interest that gives rise to a due process interest. We also observe that courts have characterized various other state licenses as privileges, not entitlements. *See* Tex. Parks & Wild. Code Ann. § 61.055 ("the most equitable and reasonable privilege to hunt game animals or catch aquatic animal life"); *see also State v. Project Principle, Inc.*, 724 S.W.2d 387, 390 (Tex. 1987) (license to teach "confers no vested rights"); *Texas Dep't of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985) (driver's license is privilege, not right). We overrule Shrieve's second issue.

## CONCLUSION

Having found that the Department did not exceed its statutory authority by issuing the August letter without prior notice and hearing, and that there was no due process right to continued receipt of MLD permits prior to the Department's issuance of the letter, we hold that the district court did not abuse its discretion by denying the temporary injunction.[8] We affirm the order.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: May 5, 2005

_____

[8] We note that Shrieve's suit for judicial review of the Department's action remains pending.