# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00672-CV

**Carrie K. Campbell, Appellant**

**v.**

**Ninette Campbell, as Independent Executrix of the
Estate of Karleen Mouton, Deceased, Appellee**

FROM COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
NO. 2007-PC-0088, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Carrie K. Campbell ("Carrie") appeals from a grant of summary judgment in favor of her mother, Ninette Campbell ("Ninette"). Ninette sued as the executrix of the estate of Karleen Mouton, who was Ninette's mother and Carrie's grandmother. Ninette alleged that while Mouton was alive, Carrie had fraudulently placed her own name on the deed to Mouton's house and had also defrauded Mouton out of thousands of dollars. On behalf of Mouton's estate, Ninette sought monetary damages and a declaration that Carrie did not co-own the house. Ninette successfully moved for summary judgment on all her claims and then sought and obtained attorney's fees for prevailing on her declaratory-relief claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) (trial court may award attorney's fees on declaratory-relief claim). She also sought and obtained sanctions against Carrie for failing to properly serve certain documents, *see* Tex. R. Civ. P. 21b, for filing a frivolous pleading, *see* Tex. R. Civ. P. 13, and for filing a bad-faith affidavit in

opposition to Ninette's summary-judgment motion, *see* Tex. R. Civ. P. 166a(h). On appeal, Carrie argues that the evidence did not support summary judgment, that Ninette was not entitled to recover attorney's fees, and that sanctions were improper. We will reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 2002, Mouton was living in Burleson, Texas, and Carrie was living in the New Braunfels area. Mouton contacted Carrie and requested help purchasing a house in New Braunfels. Carrie contacted a realtor and found a house that suited her grandmother's needs. On March 30, 2002, Carrie executed an earnest money contract for the house. On or around April 18, 2002, Mouton signed the closing documents to purchase the house. Carrie also signed the closing documents, though it is not clear exactly when she did so. One of the main points of contention between the parties is whether Mouton knew contemporaneously that Carrie signed the closing documents; Ninette alleges that Carrie covertly signed the documents the day after Mouton signed them, thereby making herself a co-owner of the house without Mouton's knowledge, whereas Carrie alleges that Mouton instructed her to co-sign the documents as a "gift" for helping Mouton "in her times of need."

In May of 2002, after moving into her New Braunfels house, Mouton opened a joint bank account with Carrie's sister, Jamie Schindler, who also lived in the area. In January of 2003, Mouton signed a document that gave Carrie durable power of attorney over Mouton's affairs. Carrie alleges that she never "used" the power.

In November of 2004, Mouton moved into an assisted-living facility because her health was declining, and Carrie agreed to assist Mouton in renting out her house. Carrie rented out the house at a rate of $850 per month, which she allegedly agreed to collect and deposit into

2

Mouton's and Schindler's joint bank account. Carrie alleges that because the house needed significant repairs, Mouton instructed her to use the rental income to pay for repairs as needed. Carrie alleges that between November of 2004 and July of 2006 she spent over $15,700 repairing the house. She also alleges that, with Mouton's permission, she either used the rental income to pay for the repairs directly or used her own money and then reimbursed herself out of the rental income. Carrie also alleges that she used the rental income to pay property taxes and insurance premiums on the house. In the end, very little of the rent Carrie collected actually went into Mouton's and Schindler's joint bank account. In fact, bank records appear to show that (1) only two $850 rent payments were ever deposited into the account, and (2) shortly after those payments were deposited, Schindler withdrew them and paid them back to Carrie.

Around the time that Mouton moved out of her house and into the assisted-living facility, she also asked Carrie to sell her car for her. Carrie sold the car for $5,000. She alleges that she gave the $5,000 to Mouton, but Ninette alleges that Mouton never received it.

Ninette alleges that Mouton became aware of irregularities in her finances in early 2005. Mouton allegedly asked her granddaughters to explain the irregularities, and they allegedly either refused or were unable to do so.

Ninette, who had been living out of state, moved to the New Braunfels area in the summer of 2005 and began assisting Mouton in her day-to-day affairs. After Ninette helped her mother discover the full extent of the irregularities in her finances, Mouton filed a criminal complaint against her granddaughters with the New Braunfels Police Department. The Comal County District Attorney eventually decided not to prosecute. In December 2005, Mouton transferred power of attorney over her affairs from Carrie to Ninette.

3

After Mouton passed away, Ninette brought this suit on behalf of Mouton's estate to recover the money and property that Carrie and Schindler allegedly misappropriated. Ninette alleged causes of action for defalcation, misapplication of fiduciary property, violation of the Durable Power of Attorney Act,[1] fraud by nondisclosure, and conspiracy to commit fraud. She also sought a declaratory judgment that Mouton's estate was the sole rightful owner of Mouton's New Braunfels house.

Approximately four months after filing suit, Ninette moved for traditional summary judgment. *See* Tex. R. Civ. P. 166a(c). In support of her motion, Ninette filed police records, bank records, real-estate records, and several third-party affidavits.[2] She also filed two affidavits of her own—one that claimed she had personal knowledge of the factual allegations contained in the summary-judgment motion, and one that claimed her documentary exhibits were true and correct copies of the originals. The former affdavit did not state a basis for the claim of personal knowledge.

Carrie opposed Ninette's summary-judgment motion by arguing that the documentary evidence did not establish Ninette's right to recovery as a matter of law. In support of this position, Carrie submitted a personal affidavit and an affidavit by Schindler.[3] Carrie also filed (1) a motion for continuance that alleged she needed additional time to marshal evidence to rebut Ninette's summary-judgment claims, and (2) a motion to strike the personal affidavits Ninette filed in support

---

[1] Tex. Prob. Code Ann. §§ 481-525 (West 2003).

[2] The third-party affiants included Ninette's attorney; the records custodian of the New Braunfels Police Department; the records custodian of the title company involved in the purchase of Mouton's New Braunfels house; and the records custodian of the realty company involved in the purchase of Mouton's New Braunfels house.

[3] Schindler did not file her own response to Ninette's motion for summary judgment, nor did she file an appeal after summary judgment was entered against her.

4

of her summary-judgment motion. Carrie alleged that Ninette's affidavits were, among other things, based on hearsay and not based on personal knowledge. She also alleged that the third-party affidavits Ninette submitted were defective for a variety of reasons.

Without expressly addressing Carrie's motions, the trial court granted Ninette's summary-judgment motion and awarded Ninette damages and attorney's fees. At the hearing on Ninette's summary-judgment motion, Ninette orally requested sanctions against Carrie on several grounds. First, she requested sanctions under Texas Rule of Civil Procedure 21b because Carrie had not served Ninette with a copy of her motion for continuance or a copy of the affidavit Schindler filed in support of Carrie's response to the summary-judgment motion. Second, Ninette requested sanctions under Texas Rule of Civil Procedure 13 because Carrie allegedly made false representations in her response to Ninette's summary-judgment motion. Third, Ninette requested sanctions under Texas Rule of Civil Procedure 166a(h) because Carrie allegedly made false representations in the affidavit she filed in support of her response to Ninette's summary-judgment motion.

The trial court granted Ninette's motion for sanctions. It awarded her $2,500 under Rule 21b, $5,000 under Rule 13, and $3,000 under Rule 166a(h). It also awarded her $3,000 in attorney's fees and $1,000 in "reasonable expenses" for the costs incurred in pursuing sanctions.

Carrie appeals the summary judgment, the award of attorney's fees, and the award of sanctions. Relatedly, she also appeals the denial of her motion for continuance and her motion to strike.

**STANDARD OF REVIEW**

We review the grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A "traditional" motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). In reviewing a grant of summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

We review the award of attorney's fees under Texas Civil Practice and Remedies Code section 37.009 for abuse of discretion. *Montemayor v. Ortiz*, 208 S.W.3d 627, 663 (Tex. App.—Corpus Christi 2006, pet. denied). We may reverse an award of attorney's fees if the trial court awarded them without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.*

We also review sanctions awards for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may reverse a sanctions award if the trial court imposed it without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.*

**DISCUSSION**

Carrie raises eleven points of error that reduce to five basic issues: (1) whether the trial court erred by denying her motion for continuance; (2) whether the trial court erred by denying her motion to strike the evidence supporting Ninette's summary-judgment motion; (3) whether the

trial court erred by granting summary judgment; (4) whether the trial court erred by awarding Ninette attorney's fees; and (5) whether the trial court erred by awarding Ninette sanctions. We will not address the first two of these issues, as they are obviated by our consideration of whether the trial court erred by granting summary judgment.[4] We turn, then, to the merits of Ninette's summary-judgment motion.

***Summary Judgment***

As stated above, Ninette brought claims for defalcation, misapplication of fiduciary property, violation of the Durable Power of Attorney Act, fraud by nondisclosure, conspiracy to commit fraud, and declaratory relief. Ninette submitted four forms of evidence to support her motion for summary judgment on these claims: affidavits, police records, financial records, and real-estate records.

Some of the affidavits Ninette submitted were executed by third parties. These affidavits purported to substantiate Ninette's attorney's fees and to authenticate the records attached to her summary-judgment motion. They did not purport to verify the factual allegations contained in the motion.

Ninette also submitted two affidavits of her own. One was a custodial affidavit that purported to authenticate the records attached to the motion. The other, which is the important one for present purposes, asserted that Ninette had personal knowledge of the factual allegations in the

---

[4] Indeed, Carrie's appellate brief does not specifically request relief from the trial court's denial of her motion for continuance and motion to strike; it merely requests a reversal of the summary judgment.

summary-judgment motion and that those allegations were true.[5] Critically, however, the affidavit did not say *how* Ninette had personal knowledge of the facts.

This omission is fatal. Affidavits must be based on personal knowledge. *See* Tex. R. Civ. P. 166a(c). All of Ninette's causes of action were based on events in which she did not participate. To illustrate:

- Ninette's causes of action for defalcation and misapplication of fiduciary property were based on Carrie's alleged failure to transmit rent payments and car-sale proceeds to Mouton.

- Ninette's cause of action under the Durable Power of Attorney Act was based on Carrie's alleged failure to satisfy Mouton's request for "an accounting of all activity initiated by [Carrie] involving Mrs. Mouton's financial accounts and property."

- Ninette's causes of action for declaratory relief and fraud by nondisclosure were based on Carrie's alleged failure to inform Mouton that she co-signed the deed to Mouton's house.

- Ninette's cause of action for conspiracy to commit fraud was based on Carrie and Schindler's alleged coordinated efforts to remove Mouton's money from Mouton's and Schindler's joint bank account.

Ninette's affidavit claimed that Ninette had personal knowledge of these events, but it revealed no basis for that claim. The affidavit was therefore incompetent summary-judgment evidence. *See id*.; *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam) ("An affidavit showing no basis for personal knowledge is legally insufficient."); *Trostle v. Combs*, 104 S.W.3d 206, 214 (Tex.

---

[5] The testimonial part of the affidavit stated in full:

My name is Ninette Campbell. I am at least 18 years of age and of sound mind. I have personal knowledge of the facts alleged in Plaintiff's Motion for Summary Judgment. I hereby swear that the statements contained in Section I, titled Facts and Procedural History, which are incorporated herein as if set forth in their entirety[,] and[] which are filed herein in support of Plaintiff's Motion for Summary Judgment[,] are true and correct.

App.—Austin 2003, no pet.) ("The mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for such knowledge.").

Ninette claims on appeal that she acquired personal knowledge of the facts alleged in her summary-judgment motion through her role as executrix of Mouton's estate. This claim is patently wrong—Ninette's role as executrix could not have given her personal knowledge of events in which she did not participate—but in any event Ninette did not make the claim in her affidavit. It therefore cannot have been a basis for the trial court to credit the affidavit's assertion that Ninette had personal knowledge.

Ninette also claims that Carrie failed to preserve error on the personal-knowledge issue because she did not properly raise and obtain a ruling on it in the trial court. That fact is irrelevant; Carrie raises the issue on appeal. *See Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 226-27 (Tex. App.—El Paso 2002, no pet.) ("[A] lack of personal knowledge, reflected in the affiant's testimony itself and not just as the lack of a formal recitation, is a defect of substance that may be raised for the first time on appeal."); *City of Wilmer v. Laidlaw Waste Sys., Inc.*, 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994), *aff'd*, 904 S.W.2d 656 (Tex.1995) ("The failure of an affidavit to be made on personal knowledge . . . is a defect in substance, not form, and need not be objected to at trial to be a ground for reversal."); *see also Trostle*, 104 S.W.3d at 214 ("When the substance of an affidavit reveals that it was not made on personal knowledge, the affidavit is not competent summary-judgment evidence.").[6]

---

[6] As we recently noted, "there are Texas decisions (including at least one earlier decision from this Court) holding that a summary-judgment affiant's lack of personal knowledge may be a waivable defect of form," but "in more recent years we, like many of our sister courts, have concluded that an affidavit's failure to demonstrate a basis for personal knowledge renders it incompetent summary-judgment evidence." *Sprayberry v. Siesta MHC Income Partners,*

9

In sum, because Ninette's affidavit did not show a basis for personal knowledge, it did not support the factual allegations in Ninette's summary-judgment motion. Thus, summary judgment was improper unless some other evidence supported the allegations (or at least supplied the missing basis for Ninette's claim of personal knowledge). *See* Tex. R. Civ. P. 166a(c).

The other evidence that Ninette submitted consisted of police records, financial records, and real-estate records. Carrie argues that the police records were incompetent summary-judgment evidence because they were based on hearsay-laden witness reports. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam) (same evidentiary standards apply to summary judgment proceedings as to regular trial); *Kerlin*, 274 S.W.3d at 668 (hearsay summary-judgment evidence "carries no probative weight" if properly objected to). Ninette argues that Carrie waived this argument by failing to preserve it in the trial court. Assuming that Ninette is right, the police records still do not establish that Ninette was entitled to summary judgment; they contain statements that support both Ninette's and Carrie's versions of events, and we must take as true the statements that support Carrie's. *See Siegler*, 899 S.W.2d at 197 (in reviewing summary judgment, appellate courts take as true evidence favorable to the nonmovant).

The financial records that Ninette submitted are also ambiguous; the numerical data they contain are consistent with Ninette's allegations, but they do not show what was said or not said, or what agreements were reached or not reached, between Carrie and Mouton. Thus, they do not establish as a matter of law that Carrie acted improperly in failing to deposit certain funds into her grandmother's bank account. Similarly, the records show that Schindler drew checks to Carrie

*L.P.*, No. 03-08-00649-CV, 2010 Tex. App. LEXIS 2517, at *10 (Tex. App.—Austin Apr. 8, 2010, no pet. h.).

10

on Schindler's and Mouton's joint account, but they do not show that Schindler did so without Mouton's permission. Finally, the records contain copies of checks to Carrie on which Schindler allegedly forged Mouton's signature, but the record contains no evidence (let alone legally conclusive evidence) that the signatures on the checks were in fact forged.

The real estate records that Ninette submitted fare no better. They show that Carrie signed various documents including the deed to Mouton's house, but they do not show that she did so without Mouton's permission (i.e., fraudulently).

In sum, Ninette's summary-judgment evidence failed to establish that Ninette's factual allegations were beyond dispute. The trial court therefore erred in granting Ninette's summary-judgment motion. *See* Tex. R. Civ. P. 166a(c).[7]

### *Attorney's Fees*

The trial court awarded Ninette attorney's fees under Texas Civil Practice & Remedies Code section 37.009. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (trial court may award attorney's fees on declaratory-relief claim). Because we are reversing the summary judgment on Ninette's declaratory-relief claim and remanding the cause for further proceedings, the award of attorney's fees cannot stand at this juncture. Accordingly, we reverse the award of attorney's fees.

---

[7] Ninette argues that at a minimum we should affirm the summary judgment as to her declaratory-relief claim because Carrie does not address that claim in her appellate brief. While it is true that Carrie's brief does not address the declaratory-relief claim by name, it extensively addresses the alleged fraud by nondisclosure on which the claim is based. That is sufficient to preserve error. *See* Tex. R. App. P. 38.1(f) (statement of issue will be treated as covering every subsidiary question fairly included); *Perry v. Cohen*, 272 S.W.3d 585, 587-88 (Tex. 2008) (per curiam) ("[W]e liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants.") (citation and punctuation omitted).

*Sanctions*

As stated above, the trial court awarded Ninette sanctions in the amounts of $2,500 under Texas Rule of Civil Procedure 21b, $5,000 under Texas Rule of Civil Procedure 13, and $3,000 under Texas Rule of Civil Procedure 166a(h).[8] It also awarded her $3,000 in attorney's fees and $1,000 in reasonable expenses for the costs incurred in pursuing the sanctions order.[9] We hold that the trial court abused its discretion in imposing these sanctions.

A sanctions award "should be no more severe than necessary to satisfy its legitimate purposes." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Here, the record contains no justification for the amounts of sanctions imposed. Even if we assume that Carrie actually committed the sanctionable acts alleged, the record contains no explanation or analysis of how the sanctions imposed were proportionate to the egregiousness of Carrie's acts. Thus, it is not clear that the sanctions are "no more severe than necessary." *Id*. Moreover, at the hearing on Ninette's sanctions motion, the only evidence introduced was billing records showing Ninette's attorney's fees. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005) (holding that, unless record of evidentiary hearing demonstrates otherwise, appellate courts "should presume that . . . the trial court considered only the evidence filed with the clerk.").[10]

---

[8] Rules 21b and 13 allow a court to impose any of the sanctions set forth in Rule 215-2b. *See* Tex. R. Civ. P. 21b, 13. Thus, in considering the propriety of sanctions imposed under Rules 21b and 13, we draw on jurisprudence concerning Rule 215-2b.

[9] Rule 166a(h) states that "the court shall . . . order the party [violating the Rule] to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees."

[10] In addition, because Ninette orally moved for sanctions at a hearing of which we have no record, we do not know what evidence (if any) Ninette cited to justify her initial allegation that Carrie acted sanctionably.

12

Thus, we do not know on what bases the court found that Carrie knowingly failed to serve documents on Ninette, knowingly included falsehoods in her opposition to Ninette's summary judgment motion, and knowingly filed a false affidavit. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (sanctions must have "direct nexus" with "offensive conduct"). As a result, we hold that these findings, and the sanctions predicated on them, were arbitrary. *See Zarsky v. Zurich Mgmt., Inc.*, 829 S.W.2d 398, 399 (Tex. App.—Houston [14th Dist.] 1992, no writ) (order imposing sanctions must state with particularity acts or omissions on which sanctions are based). It follows that Ninette was not entitled to recover attorney's fees and costs for pursuing her sanctions motion.

In light of this result, we decline to address Carrie's alternative argument that she received inadequate notice of the sanctions hearing.

## CONCLUSION

For the reasons stated above, we reverse the trial court's summary judgment, award of attorney's fees, and award of sanctions. We remand the cause for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed: June 18, 2010

13